**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LARRY H. HUNT,** | ) | **CASE NO.  4:05CV1046** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Judge John M. Manos** |
| **CITY OF YOUNGSTOWN WATER DEPARTMENT** | ) ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OF OPINION** |

On April 25, 2005, Larry H. Hunt ("Hunt") filed the above-captioned case. He alleges that he was denied the position of turnkey supervisor because of his sex in violation of Title VII of the Civil Rights Act of 1964, Ohio Revised Code § 4112, and public policy. (Docket No. 1)

On August 15, 2005, the City of Youngstown Water Department ("City Water Department") filed a motion for summary judgment. (Docket No. 15.) On September 28, 2005, Hunt filed a brief in opposition. (Docket No. 19.) On October 11, 2005, the City Water Department filed a reply. (Docket No. 20.)

All issues have been fully briefed and are ready for adjudication. For the following reasons, the City Water Department's motion for summary judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

On February 28, 1978, Hunt began working for the City Water Department. (Docket No. 19-2 "Hunt Affidavit," at ¶3.) In 1992, he became a turnkey. Id. at ¶4. A turnkey turns water service on and shuts water off when customers are delinquent in payments. Id. From 1998 to 2002, he periodically served as turnkey supervisor while the acting supervisor, Joanne Murphy, was on vacation or away from the office. Id. at ¶5.

On June 28, 2002, Murphy retired as turnkey supervisor. (Docket No. 15-2 "Sammarone Affidavit," at ¶5; Docket No. 15-3 "Casciano Affidavit," at ¶6.) Water Commissioner Charles Sammarone did not immediately schedule a civil service exam to fill the position because the state auditor's office had recommended that the entire turnkey division be eliminated. (Sammarone Affidavit, at ¶9.) In the interim, Hunt and another employee, Vicki Williams, served as "out of rank" turnkey supervisors. (Sammarone Affidavit, at ¶7; Casciano Affidavit, at ¶7; Docket No. 15-4 "Labatte Affidavit," at ¶8.) However, the Civil Service Commission notified Sammarone that only one person could serve as turnkey supervisor. (Docket No. 19-3 "Sammarone Depo.," at 24.) The position was temporarily given to Hunt. Id.

While acting as interim supervisor, Hunt received supervisor wages but received vacation and sick pay at the level of turnkey. (Sammarone Affidavit, at ¶17; Casciano Affidavit, at ¶13; Labatte Affidavit, at ¶13.) At no time did he receive a letter from the Civil Service Commission or any other authority indicating that he had been provisionally appointed as turnkey supervisor. (Docket No. 15-6, "Hunt Depo.," at 86.) Also, he never submitted an application in writing for a provisional appointment non-competitive exam. Id. at 93-94.

In the spring of 2003, Hunt inquired into whether a civil service exam would be scheduled. (Hunt Affidavit, at ¶8.) In May of 2003, the Civil Service Commission informed Sammarone that an exam needed to be scheduled. (Sammarone Affidavit, at ¶10; Casciano Affidavit, at ¶15.) Initially, the exam was limited to turnkey employees. (Sammarone Depo, at 58.) However, the Civil Service Commission opened it up to all water department employees and the general public. (Sammarone Affidavit, at ¶11; Casciano Affidavit, at ¶16.)

On January 17, 2004, the exam was administered. Hunt earned a score of 94.3, the ninth highest score and the third highest score among water department employees. (Hunt Affidavit, at ¶11; Sammarone Affidavit, at ¶25; Casciano Affidavit, at ¶23.)

On March 1, 2004, the position of turnkey supervisor was awarded to Candace Norwood, an African American female. (Sammarone Affidavit, at ¶¶29-30; Casciano Affidavit, at ¶31.) She earned a score of 105.6, the third highest score and the highest score among water department employees. (Sammarone Affidavit, at ¶26; Casciano Affidavit, at ¶24.)

According to Hunt, he was more qualified than Norwood because of his (1) seniority; (2) hands on experience as turnkey supervisor; and (3) twelve years experience as a turnkey. (Hunt Affidavit, at ¶15.) In contrast, Norwood had less seniority, never worked as a turnkey, and had no supervisory experience in the water department. Id.

Based on these facts, Hunt filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Docket No. 1-2.) On January 26, 2005, the EEOC issued a right to sue letter. Id. On April 25, 2005, Hunt filed the above-captioned case. (Docket No. 1.) He alleges that the decision to promote Norwood was based on sex and thus, discriminatory. He also alleges that his temporary appointment as turnkey supervisor between June 29, 2002 and

-3-

March 1, 2004 rendered him a "provisional appointee."  Provisional appointees who pass the civil service exam must be offered the permanent position pursuant to O.R.C. § 124.26(B).

Hunt is seeking $250,000 in compensable damages, back pay, punitive damages, attorney fees and costs, and injunctive relief requiring that the City Water Department promote him to the position of turnkey supervisor.  (Docket No. 1, at 4.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact.  Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990).  To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant.  Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

### III.    LAW AND ANALYSIS

A claim of discrimination under Title VII and O.R.C. § 4112 requires evidence sufficient to make out a prima facie case of discrimination under McDonnell-Douglas. Williams v. Ford Motor Co., 187 F.3d 533, 538 (6th Cir. 1999). In order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) that similarly situated non-protected employees were treated more favorably. Knox v. Neaton Auto Products Mfg., Inc., 375 F.3d 451, 456-57 (6th Cir. 2004); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In a reverse discrimination case, the plaintiff must establish that (1) background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority; and (2) the employer treated differently, similarly situated employees who are not members of the protected class. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 (6th Cir. 1994).

Once established, the prima facie case creates a rebuttable presumption requiring the defendant to provide some legitimate, non-discriminatory reason for his conduct. Anthony v. BTR Auto. Sealing Sys., 339 F.3d 506, 515 (6th Cir. 2003). The defendant's burden is one of production, not persuasion. Gray v. Toshiba Am. Consumer Prods., 263 F.3d 595, 599 (6th Cir. 2001). The ultimate burden of persuasion rests with the plaintiff to establish that the legitimate, non-discriminatory reason is pretextual. Anthony, 399 F.3d at 515. In doing so, the plaintiff

must establish that the reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct.  See Carter v. University of Toledo, 349 F.3d 269, 274 (6th Cir. 2003).  Showing pretext by the first and third methods permit an inference of illegal discrimination.  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).  Showing pretext by the second method requires the plaintiff to introduce additional evidence of discrimination.  Id.

Here, the City Water Department argues that Hunt is unable to establish a prima facie case because (1) he has not shown that background circumstances support the notion that the City Water Department is that unusual employer who discriminates against the majority; and (2) he has not shown that he was treated differently than similarly situated non-protected employees.

### A.    First Prong: Background Circumstances

In order to establish background circumstances that support the suspicion that a defendant is that unusual employer who discriminates against the majority, a plaintiff can present evidence that the defendant has unlawfully considered sex as a factor in the hiring or promoting of employees in the past.  See Zambetti v. Cuyahoga Cmty. Coll., 314 F.3d 249, 256 (6th Cir. 2002).  Here, Hunt cites to four pieces of evidence.

First, Hunt argues that Water Commissioner Sammarone unlawfully considered sex when he violated the civil service rules and split the turnkey supervisor position between Hunt and a less-senior female, Vickie Williams.  Typically, a vacancy is filled by the most senior employee.  (Sammarone Depo., at 37.)  However, Sammarone split the position between Hunt and Williams because the department had a history of poor performance with numerous landlord complaints and because a state audit recommended closing the division.  Id. at 21.  Thus, Hunt was placed in

-6-

charge of the day-to-day operations because of his seniority and Williams was placed in charge of the landlord complaints. Id. at 20-21. Once Sammarone realized that the position could not be split, Hunt was made turnkey supervisor. (Sammarone Depo., at 24.) Hunt has offered no evidence to support the notion that he was "forced" to share his supervisor duties with Williams because she was a woman. In fact, he stated that he needed her help to handle the additional paperwork. (Hunt Depo., at 89-90.) Moreover, at all times, he received supervisor wages. (Sammarone Affidavit, at ¶17; Casciano Affidavit, at ¶13; Labatte Affidavit, at ¶13.) Thus, the fact that Hunt temporarily shared the position with Williams does not support the notion that the City Water Department is that unusual employer who discriminates against the majority.

Second, Hunt argues that the opening of the civil service exam to all water department employees was designed to benefit female employees. Initially, the exam was limited to turnkeys. (Sammarone Depo., at 43.) On August 7, 2003, seven female employees and their male union representative petitioned to have the exam open to all water department employees as was done in the past two promotional exams. (Plaintiff's Ex. 17.) The Civil Service Commission agreed and made the exam entry level. (Labatt Depo., at 44.) Water Commissioner Sammarone offered no objection. Id. Hunt has offered no evidence to support the notion that the exam was made entry level solely to benefit female employees. In fact, in his deposition, he stated that he had no objection with making the exam entry level. (Hunt Depo., at 100.) Also, as he readily concedes, opening the exam to all water department employees and the general public benefitted males and females equally. (Hunt Depo., at 101-02.) Thus, the fact that the exam was made entry level does not support the notion that the City Water Department is that unusual employer who discriminates against the majority.

Third, Hunt argues that Joanne Murphy, the preceding turnkey supervisor, was awarded the position even though Kevin Dunn had more seniority and scored higher on the civil service exam. (Hunt Affidavit, at ¶16.) However, an examination of the record indicates that it was Murphy who earned the higher score. (Docket No. 20-6, Ex. 1.)

Finally, Hunt argues that the instant case of alleged discrimination is sufficient to establish that the City Water Department is that unusual employer that discriminates against the majority. However, the Court ultimately concludes that Hunt is unable to establish a prima face case for reverse discrimination nor can he establish that the reasons offered for promoting Norwood are a pretext for discrimination. See infra Sections B & C. Thus, Hunt is unable to establish background circumstances that support the suspicion that the City Water Department is that unusual employer who discriminates against the majority.

### B. Fourth Prong: Similarly Situated Employees

To establish that similarly situated employees were treated differently, Hunt must show that the comparables are similar in all respects. Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992). Thus, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. However, these factors are not exclusive. Rather, the Sixth Circuit has instructed district courts to "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). An exact correlation is not required. Id.

Here, the undisputed evidence shows that Norwood received the highest civil service exam score among all water department employees. Also, Water Commissioner Sammarone was impressed by Norwood's plan to deal with the performance problems in the turnkey division. (Sammarone Affidavit, at ¶29-30.) Thus, Hunt and Norwood were not similarly situated.

**C.  Legitimate, Non-Discriminatory Reason and Pretext**

Even if Hunt had established a prima facie case, he has not sufficiently shown that the City Water Department's legitimate, non-discriminatory reason for promoting Norwood over him was a pretext for reverse sex discrimination. Once a prima face case is established, the burden shifts to the employer to provide legitimate, nondiscriminatory reasons for his conduct. BTR Auto., 339 F.3d at 515. Here, the City Water Department argues that Norwood was more qualified for the position based upon her higher exam score and her positive interview.

The ultimate burden rests with Hunt to show that this legitimate, non-discriminatory reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. See Carter, 349 F.3d at 274. Here, it is undisputed that Norwood received the highest civil service exam score among all water department employees. Under Ohio law, the appointing authority is permitted to consider the top ten candidates standing highest on the eligibility list for the class or grade to which the position belongs. See O.R.C. § 124.27. Thus, focusing on the civil exam score is permissible.

Hunt argues that if the City Water Department wanted the person with the highest score, it should have promoted Kenneth Craig, who scored higher than Norwood. However, Craig was not an employee in the water department and Water Commissioner Sammarone wanted to focus on water department employees. In justifying his decision, Sammarone stated:

-9-

> I believe Candace Norwood was qualified, if not more qualified, for the turnkey supervisor's position than was Larry Hunt because she scored the highest of any water department employee on the examination, because of her exemplary service and performance record at the City of Youngstown Water Department, and because she met the criteria under Ohio Civil Service laws, and the rules of the City of Youngstown Civil Service Commission, for being on the eligibility list for the position. Additionally, even though Candace Norwood had never served as turnkey supervisor, her qualifications were well within those characteristics and qualifications identified in the civil service examination notice and the City's job description for the position.

(Sammarone Affidavit, at ¶30.) Although Hunt and Norwood equally identified the problems in the division, according to Sammarone, Norwood "presented a positive vision for promoting improved performance for employees in the turnkey division." (Sammarone Depo., at 59-60.)

Hunt has not shown that these legitimate, non-discriminatory reasons for promoting Norwood have no basis in fact, did not actually motivate the challenged conduct, or are insufficient to explain the challenged conduct. Rather, he admits that the decision to promote Norwood was based on the test scores. (Hunt Depo., at 140.) In fact, when specifically asked whether he had any proof that Norwood was promoted simply because she was a woman, Hunt responded "I have no proof." Id. at 141.

Hunt argues that a reasonable jury could infer discrimination from Water Commissioner Sammarone's alleged inconsistent explanations for making the civil service exam entry level. Sammarone stated in his deposition that he had initially requested to limit the exam to turnkeys. However, the Civil Service Commission denied the request and made the exam entry level. (Sammarone Depo., at 43.) Civil Service Administrator Jennifer Labatt stated in her deposition that Sammarone "had no problem with the exam going back to entry level at that time." (LaBatte Depo. at 44.) According to Hunt, "[t]his evidence indicates that the reason offered by Sammarone, that he was forced by the Civil Service Commission to do something he did not

-10-

want to do, was false and therefore pretextual to cover up intentional discrimination against Hunt." (Docket No. 19, at 8.) The Court disagrees. There is nothing patently inconsistent between Sammarone's statement that the Civil Service Commission denied his request to limit the exam to turnkeys and Labatte's statement that Sammarone offered no subsequent objection.

Finally, Hunt argues that he was legally entitled to the position because he was a provisional appointee who passed the civil service exam. Pursuant to O.R.C. § 124.26(B), any provisional appointee who passes the civil service exam must be given the permanent appointment. Thus, according to Hunt, the fact that he was denied the promotion raises an inference of unlawful discrimination. However, Hunt was never provisionally appointeed. To become a provisional appointee under Ohio law, the appointing authority must nominate the appointee to the director for noncompetitive examination. See O.R.C. § 124.30(A). Here, Hunt never received a letter from any appointing authority telling him that he was provisionally appointed. (Hunt Depo., at 86.) He also never submitted an application for a noncompetitive examination. Id. at 93-94. Moreover, while acting as interim turnkey supervisor, Hunt received vacation and sick pay at the level of turnkey, which is typical of out-of-rank temporary appointments. (Labatte Depo., at 27.) Thus, he was never provisionally appointed.

Hunt argues however, that he became a "de facto" provisional appointee because he served as turnkey supervisor for eighteen months. However, Ohio law does not recognize de facto appointments:

> No person shall be appointed, removed, transferred, laid off, suspended, reinstated, promoted, or reduced as an officer or employee in the civil service, in any manner or by any means other than those prescribed in this chapter, and the rules of the director of administrative services or the municipal or civil service township civil service commission within their respective jurisdictions.

-11-

O.R.C. § 124.06. As the state appellate court held in Benson v. Fairfield, 94 Ohio App.3d 458, 461 (12th App. Dist. 1994):

> The Civil Service Code does not recognize "de facto" appointment, nor should the courts. To hold otherwise would permit low level supervisors to make "appointments" in the classified civil service, either through ignorance or collusion, by assigning duties to employees which are outside the scope of the civil service positions to which those employees had been originally appointed or hired.

Hunt's citation to State ex rel. Dahmen v. City of Youngstown, 40 Ohio App.2d 166 (7th App. Dist. 1973) is unavailing. Although the Dahmen court recognized the possibility of de facto provisional appointments, the court made clear that an employee can only be provisionally appointed on a de facto basis after he has made a written request for a noncompetitive examination. Id. at 175. Hunt never made such a request. (Hunt Depo., at 93-94.)

In conclusion, Hunt has not established that the legitimate, non-discriminatory reasons offered by the City Water Department for promoting Norwood to the position of turnkey supervisor are a pretext for unlawful discrimination.

## IV. CONCLUSION

For the foregoing reasons, the City Water Department's motion for summary judgment is **GRANTED**. Each party to bear its own costs.

**IT IS SO ORDERED.**

**Date: October 21, 2005**　　　　　　　　　　*/s/ John M. Manos*　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**